UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

UNITED STATES OF AMERICA            :

    -against-                      :    08 Cr. 972 (DAB)(HBP)

ANTHONY J. CUTI and                 :    REPORT AND
WILLIAM J. TENNANT,                      <u>RECOMMENDATION</u>
                                    :
             Defendants.
                                    :
----------------------------------X


       PITMAN, United States Magistrate Judge:


       TO THE HONORABLE DEBORAH A. BATTS, United States

District Judge,


I.  <u>Introduction</u>


       By Order dated October 14, 2011, the Honorable Deborah

A. Batts, United States District Judge, referred this matter to

me to conduct an inquest to determine the amount to be awarded in

restitution to Duane Reade Inc. ("Duane Reade") and Oak Hill

Capital Partners, L.P. ("Oak Hill").  For the reasons set forth

below, I respectfully recommend that Duane Reade be awarded

restitution in the amount of $4,544,634.60 and that no restitu-

tion be awarded to Oak Hill.

II.  <u>Facts</u>

   A.  Facts Underlying
       Cuti's Conviction and
       <u>Proceedings Prior to Verdict</u>

        The facts giving rise to Anthony Cuti's conviction are

set forth in detail in Judge Batts' Order and Memorandum dated

July 29, 2011 addressing various restitution issues.  <u>United</u>

<u>States v. Cuti</u>, 08 Cr. 972 (DAB), 2011 WL 3585988 (S.D.N.Y. July

29, 2011).  Familiarity with that Order is assumed.  I recount

the facts here only to the extent necessary to understand the

restitution issues.

        Cuti was the chairman and Chief Executive Officer

("CEO") of Duane Reade from 1996 through 2005.  The evidence

offered at trial established that during at least part of his

tenure at Duane Reade, Cuti engaged in a two-part accounting

scheme to create the false appearance that Duane Reade's income

was higher than it actually was.  Judge Batts referred to the two

aspects of Cuti's conduct as the "real estate concession income"

scheme and the "credit and rebilling" scheme.

        In order to perpetrate the real estate concession

income scheme, Duane Reade sold various real estate interests

such as commercial leases and options on properties to third

parties for far more than the real estate interests were actually

worth.  In order to induce the buyer of the interest to engage in the transaction, Cuti entered into side agreements to make "return payments" to the buyer.  The return payments were ostensibly for services provided to Duane Reade by the buyer of the real estate interest, but in truth these services were never provided.  The net effect of these transactions was that Duane Reade was able to falsely report higher income in certain quarters.

The second part of the scheme that gave rise to Cuti's conviction was the "credit and rebilling" scheme.  In order to execute this scheme, Duane Reade employees, acting on Cuti's instructions, would induce vendors who provided goods and services to Duane Reade to issue bogus credits to Duane Reade; these credits had the effect of decreasing Duane Reade's costs and boosting its income.  Like the real estate transactions, Cuti was able to induce the vendors to enter into these transactions by entering into side agreements under which the vendors would re-bill for the amounts of the falsely issued credits and the "rebills" would be charged against capital accounts.  Again, these transactions had the net effect of falsely inflating Duane Reade's income and profits.

In July 2004, Oak Hill, through its affiliate Oak Hill Capital Management Partners, L.P. and other affiliated and non-

affiliated investors purchased all the outstanding stock of Duane
Reade.  Oak Hill and the other investors did not directly pur-
chase Duane Reade's stock; rather, the stock was purchased
through the buffer of two intermediary corporations -- Duane
Reade Shareholders LLC ("DRS") and Duane Reade Holdings Inc.
("Holdings").  Oak Hill and the other members of the investor
group owned all of the stock of DRS; DRS owned substantially all
of the stock of Holdings; after the acquisition, Holdings was the
actual owner of the Duane Reade stock (Declaration of Bruce C.
Bishop, Esq., dated Jan. 6, 2012 (Docket Item 208) ("Bishop
Decl."), Ex. N).

Cuti was retained as CEO and Chairman of Duane Reade
after the acquisition pursuant to a written employment contract
(see Bishop Decl. Ex. B).  On November 21, 2005, however, Cuti
was terminated from his positions; the letter informing Cuti that
he had been terminated was signed by Holdings and Duane Reade
(Bishop Decl. Ex. B).  At the time Cuti was terminated, Holdings
and Duane Reade expressly acknowledged that "[b]ased on the facts
and circumstances [then] known to the Board of Directors of each
of [Duane Reade] and Holdings . . . the termination of [Cuti's]
employment and removal [was] being made without Cause" (Bishop
Decl. Ex. B).  The parties were unable to resolve their differ-
ences concerning the post-termination benefits to which Cuti was

4

entitled, and Cuti commenced an arbitration against Duane Reade, Holdings and DRS on or about September 1, 2006 (Bishop Decl. Ex. A). Among other things, Cuti sought more than $20 million and 4.5% of the value of Duane Reade (Bishop Decl. Ex. A at 38-41).

The law firm of Paul, Weiss, Rifkind, Wharton & Garrison, LLP ("Paul, Weiss") was retained to defend Duane Reade, Holdings and DRS in the arbitration (Bishop Decl. Ex. D at 1). Paul, Weiss began working on the matter in September 2006 (I Revised Appendix, Fee and Expense Documentation, Paul Weiss Rifkind, Wharton & Garrison[1] ("Rev. PW App.") Tab 1 at 1-18).

Approximately one week before Cuti filed his demand for arbitration, Duane Reade's former Director of Construction disclosed some of the credit and rebilling transactions to Duane Reade's then General Counsel, Michelle Bergman, Esq. (Declaration of Daniel L. Beller, dated Oct. 18, 2010) (Docket Item 116) ("Beller Decl."), ¶ 8 & Ex. B). After conducting her own investigation, Bergman conferred with Paul, Weiss concerning the allegations, and the matter was subsequently disclosed to the

---

[1]In December 2011, Duane Reade and Oak Hill submitted to my chambers a 3-volume Revised Appendix of Paul, Weiss's Fee and Expense Documentation and a 1-volume Revised Appendix of Fee and Expense Documentation of Counsel for Duane Reade Employees. These documents will be filed with Clerk of the Court contemporaneously with the filing of this Report and Recommendation

Audit Committee of Duane Reade's Board of Directors (Beller Decl. ¶ 9). The Audit Committee, in turn, retained the law firm of Cooley Godward Kronish LLP ("Cooley") to conduct an investigation (Beller Decl. ¶ 9). Cooley retained a forensic accounting firm -- AlixPartners, LLP -- to assist it (Beller Decl. ¶ 9). Cooley conducted its investigation between November 2 and December 11, 2006 and concluded that the credit rebilling scheme took place from 2004 through 2006 and resulted in several million dollars of maintenance and repair costs being improperly classified as capital expenditures (Beller Decl. Ex. G at 1, 5, 23). Cuti declined to be interviewed by Cooley in connection with the investigation unless Duane Reade withdrew certain counterclaims it had asserted in the arbitration (Beller Decl. Ex. G at 2).

At the same time Cooley was investigating the credit rebilling transactions, Paul, Weiss was conducting a parallel investigation to develop defenses and counterclaims in connection with the arbitration. The time charges of Paul, Weiss attorneys were recorded under billing matter number 017587.00007, "Duane Read Holdings -- Arbitration Defense" (Rev. PW Tab 1; see also Rev. PW numbered Tabs 2-45). Some of the bills for the arbitration were split between Duane Reade and Oak Hill; Duane Reade paid 35% of the bills while Oak Hill paid the remaining 65% (see Rev. PW Tab 4 and Rev. PW Tab 5).

In early February 2007, in the course of preparing for the arbitration, Duane Reade learned facts that raised suspicions concerning certain real estate transactions (Beller Decl. ¶ 11). After an initial investigation by Paul, Weiss attorneys, this matter was also disclosed to Duane Reade's Audit Committee, and the Audit Committee retained Cooley a second time to investigate the real estate concession transactions (Beller Decl. ¶ 11). Cooley's investigations of these transactions lasted from February 21, 2007 through May 9, 2007; Cooley again retained AlixPartners to assist in the investigation (Beller Decl. Ex. G at 1). Cooley concluded that between 2000 and 2005, Cuti "engaged in a fraudulent scheme designed to result in upfront recognition of real estate concession income to improve Duane Reade's earnings" (Beller Decl. Ex. G at 2). As was the case with its prior investigation, Cuti declined to be interviewed in connection with the real estate concession investigation (Beller Decl. Ex. G at 1).

Based on the results of the two Cooley investigations, Duane Reade, Holdings and DRS filed amended counterclaims and affirmative defenses in the arbitration on or about April 9, 2007 (Bishop Decl. Ex. D). Duane Reade admits that the product of the Cooley investigations played a substantial role in the development of its defenses and counterclaims in the arbitration (see

Beller Decl. Ex. D at 31). The arbitrator accepted the amended
counterclaims and affirmative defenses on May 17, 2007 (Beller
Decl. at 18 n.7).

Five days later, on May 22, 2007, Duane Reade's counsel
met with representatives of the United States Attorney's Office
for the Southern District of New York ("USAO") and the New York
Regional Office of the Securities and Exchange Commission and
disclosed the results of the two Cooley investigations and Paul,
Weiss's own investigation (Beller Decl. ¶ 28). There is no
dispute that the Government's investigation commenced on May 22,
2007 (Beller Decl. ¶ 28). After meeting with the USAO and the
SEC, Paul, Weiss was served with a grand jury subpoena seeking
all documents and data in Duane Reade's care, custody or control
relating to "Real Estate Concession Income transactions," "vendor
credit transactions from vendors involved in store construction"
and "internal quarterly analyses of financial performance,
including, but not limited to the following metrics: net income;
EBITDA; earnings per share; revenues; and expenses" (Beller Decl.
¶ 28 & Ex. C at 4).[2]

---

[2]The arbitration proceeding was stayed on the government's
motion on May 25, 2007, shortly after Duane Reade's disclosure to
the USAO (Beller Decl. ¶ 29).

Duane Reade cooperated in the USAO's investigation and incurred additional legal fees. Among other things, Duane Reade's counsel attended multiple meetings with the prosecutors, participated in numerous telephone calls and responded to repeated requests for documents and additional information (Beller Decl. ¶ 30; see also Beller Decl. ¶¶ 31-37).

During the course of its investigation, the USAO also interviewed a number of current and former Duane Reade employees, some of whom testified at trial. Duane Reade provided independent counsel for each, either as a result of the individual's employment contract or Duane Reade's certificate of incorporation and/or by-laws (Beller Decl. ¶ 24). The employees for whom independent counsel was retained, the identity of the counsel and the amount of unreimbursed fees paid by Duane Reade are as follows:

| Current or Former Employee | Counsel | Unreimbursed Fee Paid by Duane Reade |
|---|---|---|
| Jerry Ray | Clayman & Rosenberg | $174,288.07 |
| Michelle Bergman | Dechert LLP | $101,821.00 |
| Michelle Bergman | Skadden, Arps, Slate, Meagher & Flom LLP | $900,095.00 |
| Michelle Bergman | Hogan Lovells LLP | $21,848.01 |

| | | |
|---|---|---|
| John Henry | Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C. | $336,580.02 |
| Glenn Smith | Kelley Drye & Warren LLP | $90,403.44 |
| Chris Darrow | Krantz & Berman LLP | $77,118.30 |
| Joseph Zahon | Sercarz & Riopelle, LLP | $9,420.00 |
| **TOTAL** | | **$1,711,573.84** |

(Beller Decl. ¶ 24).

On October 9, 2008, a grand jury sitting in this District filed an indictment charging Cuti in five counts: (1) conspiracy to commit securities fraud, to make false statements in quarterly and annual reports to the SEC, to make false statements to auditors and to make false entries in books and records, in violation of 18 U.S.C. § 371; (2) securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b-5 and 18 U.S.C. § 2; (3) two counts of making false filings with the SEC, in violation of 15 U.S.C. §§ 78m(a), 78ff, 17 C.F.R. § 240.13a-1 and 18 U.S.C. § 2 and (4) one count of making false statements to the SEC in violation of 15 U.S.C. §§ 78o(d), 78ff, 17 C.F.R. § 240.15d-1 and 18 U.S.C. § 2 (Indictment, Docket Item 1 on 08 Cr. 972). On that same date, the SEC commenced a civil

action against Cuti arising out of the same conduct.  SEC v. Anthony J. Cuti, 08 Civ. 8648 (PAE).[3]

Cuti was found guilty on all counts.  With respect to the conspiracy charge, the jury found that the government had proven that Cuti conspired to make false statements to the SEC, false statements to auditors and false entries in books and records; it did not find that the government had proven that Cuti conspired to commit securities fraud.

B.  Post-Verdict Proceedings
     Concerning Restitution

After the verdict was returned Duane Reade and Oak Hill sought an order of restitution (Docket Items 114-16 in 08 Cr. 972).  In total, Duane Reade and Oak Hill sought $52,354,707.81 calculated as follows:

| | |
|---|---|
| Oak Hill Overpayment for Duane Reade Resulting from Cuti's Conduct | $43,149,663.00 |
| Fees and Expenses of the Independent Counsel and Forensic Accountants Incurred in Connection with Duane Reade's Internal Investigations, the Restatement and the Government's Investigation and Prosecution of the Offenses | |
| | $1,855,106.87 |

---

[3]This matter was originally assigned to the Honorable John G. Koeltl, United States District Judge.  It was reassigned to the Honorable Paul A. Engelmayer, United States District Judge.

Accounting/Auditor Fees and Expenses Paid to
KPMG LLP and PricewaterhouseCoopers LLP in
Connection with Duane Reade's Internal Inves-
tigations and Restatements                            $493,000.00

Fees and Expenses of Counsel for Current and
Former Duane Reade Employees in Connection
with their Participation in the Investigation
and Prosecution of the Offenses and Atten-
dance at Proceedings Relating to the Offenses
                                                    $1,711,573.84

Fees and Expenses of Paul, Weiss, Counsel to
Duane Reade and Oak Hill, Incurred in Connec-
tion with Duane Reade's Internal Investiga-
tions, the Restatement and the Government's
Investigation and Prosecution of the Offenses
                                                    $4,566,050.21

Database Cost: Kroll Ontrack Inc.                     $579,313.89

(Beller Decl. ¶ 3).

        In an Order and Memorandum dated July 29, 2011, Judge

Batts concluded that Oak Hill was not entitled to restitution in

the amount of Oak Hill's alleged overpayment for Duane Reade.

United States v. Cuti, supra, 2011 WL 3585988 at *4-*5.  Judge

Batts found that Oak Hill had relied on a number of factors in

deciding what price to pay for Duane Reade, including its own

investigation.  That fact, in conjunction with flaws in the

methodology used by Oak Hill's expert, led Judge Batts to con-

clude that Cuti's fraud had not been proven to have caused Oak

Hill to pay for Duane Reade more than it was worth.

With respect to the remaining items of restitution sought by Duane Reade and Oak Hill, Judge Batts found that the complex calculations necessary to determine the proper amount of restitution weighed in favor of leaving Duane Read and Oak Hill to their civil remedies:

> Here, the Court declines to require Defendant Cuti to provide restitution under the VWPA and the MVRA as there remain complex issues of fact as to the amount of restitution that would unduly complicate and prolong the sentencing process. 18 U.S.C. § 3663(a)(1)(B)(ii) (VWPA); § 3663A(c)(3)(B) (MVRA).[10]
>
> > [10]While it is clear that the Court could order discretionary restitution under the VWPA if §§ 3663(a)(1)(B)(ii) and 3663A(c)(3)(B) did not apply, the Court leaves open the question of whether the MVRA applies to the type of expenses here -- those incurred during participation in the investigation or prosecution of a Title 18 offense of conviction -- given Defendant Cuti's argument that he was convicted of an "offense, which concerns the intangible of truthful information . . . not an offense against property.[]"
>
> The complex issues of fact here involve the determination of just what are the types of costs Oak Hill and Duane Reade have incurred. Here, Oak Hill and Duane Reade seek to recover restitution costs for:
>
> > "the legal, accounting and other necessary fees and expenses incurred by Duane Reade and Oak Hill relating to their investigation of the defendants' offenses; legal, accounting and other fees and expenses incurred in connection with the restatement of Duane Reade's financial statements for the years 2000-2004 ("Restatement"), which was also necessitated by the defendants' fraud; and legal, accounting and other fees and expenses incurred as a result of Duane Reade's and Oak Hill's participation in the Government's investigation and pros-

ecution of the offenses and attendance at proceed-
ings related to the offenses.

(Beller Decl., dated Oct. 18, 2010 [¶] 2.)

Mr. Daniel Beller, Esq., counsel to Oak Hill and
Duane Reade, submits that Duane Reade and Oak Hill are
in (currently-stayed) arbitration proceedings that
Defendant Cuti originally commenced in September 2006
for claims related to Defendant Cuti's employment
agreement and termination from Duane Reade. (Beller
Decl., dated Oct. 18, 2010 [¶] 27, fn7.) Duane Reade
has since filed counterclaims against Defendant Cuti in
the arbitration based upon the credit and rebilling
transactions, and real estate concession income trans-
actions. (Id.) Mr. Beller acknowledges that Oak Hill
and Duane Reade do not seek restitution for his law
firm's fees and expenses incurred solely in connection
with Defendant Cuti's own claims in the arbitration.

Two internal investigations were initiated after
Mr. Cuti filed an arbitration claim against Duane Reade
relating to his termination. The second internal
investigation report stated that the impetus for the
investigation was the result of information learned by
outside counsel "in the course of their preparation for
the arbitration commenced against Duane Reade by its
former CEO, Anthony Cuti." (Cooley Godward Report,
dated May 18, 2007 at 1.)

It is clear that Oak Hill and Duane Reade have
expended staggering amounts of money, time, and effort
in the investigation and prosecution of Defendant
Cuti's Title 18 offense. These costs are supported by
the Declaration of Mr. Beller. However, Mr. Beller's
Declaration contains over 500 pages of exhibits and an
eight-volume appendix. While the Court never received
a copy of this appendix, this appendix contains years
of detailed billing records and time descriptions.
(Beller Decl., dated Oct. 18, 2010 [¶] 4, fn2.) While
Mr. Beller has valiantly attempted to segregate costs
properly, the Court cannot ignore that some arbitra-
tion-related costs (or other inappropriate costs) could
be imbedded in the restitution calculations done by Mr.
Beller. The Court finds that the net reimbursement of

14

all costs among the parties can best be addressed in the context of Oak Hill, Duane Reade and Defendant Cuti's arbitration proceedings.[11] This is especially true given the time, expense and resources that the Court believes would be necessary for the parties to vet whether Mr. Beller's inclusions and calculations are accurate.

> [11]Defendants Cuti and Tennant are also defendants in a case that is currently before the Hon. John Koeltl and was brought by the SEC. <u>See</u> <u>SEC v. Cuti and Tennant</u>, No. 08 Civ. 8648 (JGK). It is unclear whether Oak Hill and Duane Reade could also seek to recover certain incurred expenses in that action.

> Accordingly, this Court declines to require Defendant Cuti to provide Oak Hill and Duane Reade restitution in this case.

<u>United States v. Cuti</u>, <u>supra</u>, 2011 WL 3585988 at *6-*7.

On August 19, 2011, Judge Batts vacated her July 29, 2011 decision and, after receiving additional submissions from Duane Reade, Oak Hill and Cuti, reconsidered the issue of restitution. On October 14, 2011, Judge Batts granted the request for restitution to the extent Duane Reade and Oak Hill sought to recover the fees incurred for Cooley's investigations and for a documentary database; she referred the matter to me to determine what other fees and costs should be awarded as restitution.

> The Court agrees with Defendant Cuti that expenses attributable to the non-criminal proceedings are not appropriate for restitution. The Court also agrees with Defendant Cuti that Oak Hill, separate and apart from issues relating to Duane Reade, is not a victim to whom restitution is owed based on the Court's finding that the Government failed to establish a loss. How-

ever, Oak Hill in its capacity as successor to Duane Reade is compensable.

It is clear to the Court that there are categories of fees and expenses which are subject to restitution and for which the Court now orders restitution: fees and expenses of the independent counsel and forensic accountants in the amount of $1,855,106.87; fees and expenses of Duane Reade's accountants and auditors in the amount of $493,000; and costs of the Kroll Ontrack database in the amount of $579,313.89. See United States v. Battista, 575 F.3d 226, 234 (2d Cir. 2009) (upholding restitution award of "substantial attorney's fees as a direct result of Battista's criminal acts"); United States v. Amato, 540 F.3d 153, 161 (2d Cir. 2008) (awarding accounting costs under the "other expenses" provision of the MVRA). The remaining category of fees and expenses of counsel for current and former Duane Reade employees in the amount of $1,711,573.84 does not distinguish between the criminal proceeding and representation in the SEC proceeding and arbitration. Likewise, the fees and expenses of Paul, Weiss for their work for Duane Reade in the criminal proceeding, as opposed to work for Oak Hill in either the SEC proceeding or the arbitration, needs clarification before appropriate restitution can be calculated. Battista, 575 F.3d at 234 (noting the need to parse out fees and costs associated with the criminal proceedings and rejecting "restitution for attorneys' fees not directly related to the assistance . . . provided to the government in its investigation and prosecution of the criminal offenses.").

(Docket Item 200).

After the matter was referred to me, I received additional submissions from Duane Reade and Oak Hill and from Cuti. On or about December 13, 2011 Duane Reade and Oak Hill submitted a revised restitution request with respect to the fees paid to retain independent counsel for current and former Duane Reade

employees and the legal fees paid to Paul, Weiss (see Supplemental Declaration of Daniel J. Beller in Support of Revised Request for Restitution Award, dated December 13, 2011[4] ("Supp. Beller Decl.")).  The revised request reduced the amounts sought for both categories of restitution.

With respect to the fees paid to independent counsel for current and former Duane Reade employees, Duane Reade and Oak Hill's counsel reviewed these bills a second time and deducted certain time charges which appeared to relate to either the arbitration or the SEC's civil action or suffered from some other possible deficiency.  The specific deductions, broken down by each current or former Duane Reade employee are as follows:

> Jerry Ray - Three time entries which do not appear related to the criminal investigation prosecution were eliminated along with a pro rata share of counsel's expenses.  These adjustments reduced the amount sought in connection with Ray's representation by $1,986.25 (Supp. Beller Decl. ¶ 11).

> Michelle Bergman - Several putative deficiencies in the bills submitted by Bergman's attorneys were rectified. Missing time detail and hourly rates were provided, adjustments were made for entries that appeared to be partially allocable to the SEC civil action, a previously omitted bill for legal services was added and a 10% discount allowed by one of Bergman's counsel was applied.  These adjustments reduced the amount sought

---

[4] It does not appear that this document was ever docketed in this case.  A copy will be docketed contemporaneously with the filing of this Report and Recommendation.

in connection with Bergman's representation by
$71,179.63 (Supp. Beller Decl. ¶ 12).

<u>John Henry</u> - A small number of time charges that argu-
ably related to the SEC civil action was eliminated
along with a pro rata share of counsel's expenses.
These adjustments reduced the amount sought in connec-
tion with Henry's representation by $9,377.91 (Supp.
Beller Decl. ¶ 13).

<u>Glenn Smith</u> - A small number of time charges that
arguably related to the SEC civil action in which Smith
was deposed was eliminated along with a pro rata share
of counsel's expenses.  In addition, formerly missing
time detail was provided.  These adjustments reduced
the amount sought in connection with Smith's represen-
tation by $37,299.05 (Supp. Beller Decl. ¶ 14).

<u>Chris Darrow</u> - A time charge that arguably related to
the SEC civil action was eliminated; counsel sought no
expenses.  This adjustment reduced the amount sought in
connection with Darrow's representation by $5,730.00
(Supp. Beller Decl. ¶ 15).

In the aggregate, these adjustments reduced the amount sought in

connection with the representation of current and former Duane

Reade Employees from $1,711,573.84 to $1,586,000.00, a reduction

of $125,573.84.

With respect to the legal fees Duane Reade and Oak Hill

paid to Paul, Weiss, counsel reviewed the billing records previ-

ously submitted in an effort to delete charges attributable to

the arbitration or the SEC civil action (Supp. Beller Decl. ¶¶

19-22).  Counsel did not, however, omit time spent investigating

Cuti's misconduct because this work ultimately became the subject

of the USAO's investigation and was analogous to the investiga-

tory work performed by Cooley for which restitution was ordered (Supp. Beller Decl. ¶ 20). Time spent collecting documents that were later produced in connection with the criminal investigation was also included (Supp. Beller Decl. ¶ 20). These deletions reduced the amount of fees sought by Duane Reade and Oak Hill from $4,566,050.21 to $3,664,052.32, a reduction of $901,997.89 (Supp. Beller Decl. ¶ 23).

Thus, in the aggregate, the total amount of restitution sought by Duane Reade and Oak Hill as of December 13, 2011 was $5,250,052.32.

I heard oral argument on the matter on January 13, 2012. Immediately before the oral argument, Duane Reade and Oak Hill submitted further revised restitution figures reducing yet again the amounts they sought. The January 13 revisions related solely to the restitution sought for the payments Duane Reade and Oak Hill paid to Paul, Weiss; no further revisions were made in connection with the fees sought for providing representation to the current and former Duane Reade employees. Duane Reade and Oak Hill made the January 13 revisions in response to certain objections that Cuti made in a memorandum of law his counsel submitted on January 6, 2012 (see Defendant Anthony Cuti's Memorandum in Opposition to Duane Reade and Oak Hill's Revised Request for Restitution Concerning Paul, Weiss Fees and Fees for

Representation of Duane Reade Employees, dated January 6, 2012
(Docket Item 207)).  Among other things, Cuti had objected to
Duane Reade and Oak Hill being reimbursed for (1) time charges in
which the description of services was redacted; (2) time charges
in connection with the motion to stay the arbitration pending the
outcome of the criminal proceeding; (3) time charges in connec-
tion with Duane Reade and Oak Hill's opposition to Cuti's sub-
poena pursuant to Fed.R.Crim.P. 17(c); (4) time charges for work
responding to discovery requests served in connection with the
SEC's civil action; (5) time charges for work concerning the
scope of Duane Reade's obligation to advance legal fees to
current and former employees; (6) time charges for meetings with
representatives of Oak Hill concerning arbitration discovery and
strategy, and (7) time charges for work performed prior to May
22, 2007 that appeared to relate to the collection of documents
for review or production in connection with the arbitration.  At
the January 13, 2012 oral argument, Daniel J. Beller, Esq.,
counsel for Duane Reade and Oak Hill, explained that he made
these adjustments by reviewing the contemporaneously prepared
time records and making a judgment, based on the description of
services, as to whether the time charge related to the criminal
investigation or related exclusively to the arbitration or the
SEC civil matter.  With respect to time entries that appeared to

relate to what Mr. Beller considered compensable and non-compensable work, Mr. Beller estimated an allocation and sought reimbursement for some, but not all of the time. These adjustments resulted in a further reduction of the total amount sought as restitution by $487,355.76, to a total of $4,762,696.56, made up of fees of $1,586,000.00 for representation for current and former Duane Reade employees and $3,176,696.56 for fees Duane Reade and Oak Hill paid to Paul, Weiss.[5]

## III. <u>Analysis</u>

### A. Applicable <u>Legal Principles</u>

Because a District Court has no inherent power to order that restitution be paid to the victims of a criminal offense, the sole bases for such a remedy are the Victims and Witness Protection Act ("VWPA"), 18 U.S.C. § 3663 and the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A. <u>United States v. Zangari</u>, 677 F.3d 86, 91 (2d Cir. 2012); <u>United States v. Shaw</u>, 446 F. App'x 357, 358-59 (2d Cir. 2011). "[R]estitution is designed to make the victim whole . . ., and must therefore be

---

[5]The Exhibits Duane Reade and Oak Hill submitted at the January 13, 2012 oral argument have not been docketed. They will be filed with Clerk of the Court contemporaneously with the filing of this Report and Recommendation

based on the actual loss caused by" the defendant's conduct. United States v. Lacey, 699 F.3d 710, 721 (2d Cir. 2012); see also United States v. Zangari, supra, 677 F.3d at 91 ("Because the 'purpose of restitution is essentially compensatory,' [United States v. Boccagna, 450 F.3d 107, 115 (2d Cir. 2006)], and because the MVRA itself limits restitution to 'the full amount of each victim's loss,' 18 U.S.C. § 3664(f)(1)(A), a restitution order must be tied to the victim's actual, provable, loss."); United States v. Pescatore, 637 F.3d 128, 139 (2d Cir. 2011) ("[I]t can fairly be said that the 'primary and overarching' purpose of the MVRA 'is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." (inner quotations omitted)).

The government bears the burden of proving by a preponderance of the evidence the amount of restitution to be awarded under both the VWPA and the MVRA.  18 U.S.C. § 3664(e); United States v. Zangari, supra, 677 F.3d at 92.  Because restitution is a part of a defendant's sentencing,[6] it does not appear that the Rules of Evidence apply.  Fed.R.Evid. 1101(d)(3).

---

[6]The VWPA and MVRA are codified in Chapter 232 of Title 18 of the United States Code which is entitled "Miscellaneous Sentencing Provisions."

As the Court of Appeals for the Second Circuit has noted, "determining the proper level of restitution 'requires a delicate balancing of diverse, sometimes incomparable, factors, some of which not only lack certainty but may indeed be based on mere probabilities, expectations, guesswork, even a "hunch . . . .""' United States v. Niebuhr, 456 F. App'x 36, 38 (2d Cir. 2012), quoting United States v. Rossi, 592 F.3d 372, 376 (2d Cir. 2010) (per curiam); see also United States v. Atencio, 435 F.3d 1222, 1232 (10th Cir. 2006) ("In assessing the reliability of loss figures, courts are permitted to draw inferences from the totality of the circumstances through an exercise of logical and probabilistic reasoning." (inner quotations omitted)).  Thus, in assessing the amount of a restitution award, the victim's loss need not be proven with absolute precision, and any ambiguities should be resolved in favor of the victim.  United States v. Gordon, 393 F.3d 1044, 1060 (9th Cir. 2004) ("Congress passed the MVRA to make victims of crime whole[; Congress] desire[d] that the restitution process be expedient and reasonable, with courts resolving uncertainties with a view toward achieving fairness to the victim."); United States v. Kravchuk, 335 F.3d 1147, 1157 (10th Cir. 2003) ("[T]he determination of restitution is not an exact science and the calculation of a loss need not be precise."); United States v. Badaracco, 954 F.2d 928, 943 (3rd Cir.

1992) (In calculating restitution, "any doubts are to be resolved against the defendant and with a view toward achieving fairness to the victim." (inner quotations omitted)); see also United States v. Ahidley, 486 F.3d 1184, 1189 (10th Cir. 2007); see generally United States v. Marino, 654 F.3d 310, 319 (2d Cir. 2011) ("Congress's intent to expand restitution as a remedial measure cautions against a rigid 'direct' causation standard that would foreclose restitution where even the slightest intervening event severs factually or temporally the link between defendant's crime and victim's loss."). However, a restitution award based only on a "rough estimate" is improper. United States v. Schwamborn, 467 F. App'x 35, 38 (2d Cir. 2012); see also United States v. Melhado, Flynn, & Assocs., 455 F. App'x 81, 84-85 (2d Cir. 2012).

The VWPA and MVRA permit a victim to recover not only what a criminal defendant takes from a victim, but also "other expenses related to participation in the investigation or prose-cution of the offense or attendance at proceedings related to the offense." 18 U.S.C. §§ 3663(b)(4), 3663A(b)(4).[7] Accordingly, a

---

[7]The language quoted in the text is from the VWPA. The MVRA's language is slightly different and provides for restitution of "other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4).

victim is entitled to recover the legal fees associated with the
internal investigation of an offense within the scope of the VWPA
or MVRA and the costs of assisting in the prosecution of the
offense. United States v. Battista, supra, 575 F.3d at 234 (The
recoverable legal fees are those fees "associated with assisting
the government in the investigation and prosecution of the
defendant's criminal offenses . . . ."); United States v. Amato,
540 F.3d 153, 159 (2d Cir. 2008) ("We hold that 'other expenses'
incurred during the victim's participation in the investigation
or prosecution of the offense or attendance at proceedings
related to the offense may include attorney fees and accounting
costs."); accord United States v. Bahel, 662 F.3d 610, 647-48 (2d
Cir. 2011); United States v. Battista, supra, 575 F.3d at 232-34;
United States v. Kruzovich, 09 Cr. 824 (DC), 2012 WL 1319805 at
*4-*6 (S.D.N.Y. Apr. 13, 2012) (Chin, Cir. J., sitting by desig-
nation); United States v. Skowron, 893 F. Supp. 2d 740, 747-48
(S.D.N.Y. 2012) (Cote, D.J.). In addition, in order to be
recoverable, the fees and expenses must be "necessary." United
States v. Amato, supra, 540 F.3d at 160; United States v.
Kruzovich, supra, 2012 WL 1319805 at *4. The cost of preparing
witnesses for meetings with prosecuting officials and attending
such meetings are also recoverable. United States v. Kruzovich,
supra, 2012 WL 1319805 at *5; United States v. Levis, 09 Cr. 181

(TPG), 2011 WL 497958 at *2 (S.D.N.Y. Feb. 10, 2011) (Griesa, D.J.), aff'd in part, vacated and remanded in part on other grounds, 2012 WL 2914118 (2d Cir. July 18, 2012). Finally, prejudgment interest is an appropriate component of a restitution order. United States v. Qurashi, 634 F.3d 699, 704 (2d Cir. 2011).

Although the MVRA permits recovery of "other expenses incurred during the participation in the investigation or prose-cution of the offense," 18 U.S.C. § 3663A(b)(4) (emphasis added), the Court of Appeals has not construed this language to limit a victim's recovery to only those fees incurred after the commence-ment of an investigation by a prosecutor's office. In United States v. Amato, supra, 540 F.3d at 162-63, the Court of Appeals expressly affirmed an award of investigative fees incurred both before and after the commencement of a criminal investigation.[8]

---

[8]The following paragraph from Amato confirms that restitution under the MVRA is not limited to costs incurred after a law enforcement agency commences its investigation.

> Nor are we persuaded that the district court erred in finding these expenses were sufficiently documented. EDS's claimed attorney fees and accounting costs were supported by a declaration made under penalty of perjury by a member of the law firm EDS retained to provide legal advice once it uncovered evidence of defendants' fraud. The memorandum lays out the work done by the law firm and by the forensic accounting firms hired to carry out various audits involved in
> (continued...)

See also United States v. Skowron, supra, 893 F. Supp. 2d at 748-49 (permitting restitution for investigative fees incurred prior to commencement of criminal investigation).

---

EDS's resulting investigation.  The memorandum relates how the law firm assisted EDS in completing its internal investigation of the fraud and then reporting the fraud to the government.  It goes on to explain how the law firm represented EDS at meetings with the government and assisted in gathering and producing evidence necessary to the government's prosecution, as well as responding to document requests made by the defendants.  It also explains how the law firm worked with the EDS clients and the states impacted by defendants' escheatment fraud and brought in the forensic accounting firms to perform the analysis necessary to uncover the extent of this fraud and ensure that the clients and states were made whole. This memorandum is supported by 228 pages of invoices and other documents detailing the costs involved. Viewing this evidence as a whole, we see no clear error in the district court's determination that EDS expended $3,088,466 on its attorney fees and accounting costs.

540 F.3d at 162-63 (emphasis added).

B.  Application of the
    Principles to the
    <u>Facts of this Case</u>

   1.  Legal Fees for
       Representation of
       Current and Former
       <u>Duane Reade Employees</u>

Duane Reade seeks a total of $1,586,000.00 as restitu-
tion for the sums it spent to retain private counsel for several
of its current and former employees.

As explained at the January 13, 2012 oral argument and
in Duane Reade and Oak Hill's other submissions, Duane Reade and
Oak Hill arrived at this figure by having their counsel -- Paul,
Weiss -- review the time records submitted by the counsel who
represented the current and former employees and delete any
entries which, on their face, appeared to relate to the arbitra-
tion or the SEC civil action.  There are a relatively small
number of instances where a single entry related to both the
preparation of the criminal trial and the arbitration or the SEC
action; in those instances, Paul, Weiss allocated the time
between the compensable and non-compensable matters and deleted
the time allocated to the non-compensable matters.  I have
reviewed all the time records submitted by counsel for the
current and former employees, and, with two very minor excep-

tions, I agree with Paul, Weiss's determinations.  Included in the billings for which reimbursement is sought is a charge for one hour on June 24, 2007 by Robert Jossen, Esq. for "[r]eview [of] arbitration documents" and a total charge for 0.7 hours on July 30 and 31, 2009 by C.W. Walker, Esq. for "attention to SEC matter" (Revised Request for Restitution Award on Behalf of Duane Reade Inc. and the Oak Hill Entities; Revised Appendix Fee and Expense Documentation Counsel for Duane Reade Employees, Dechert/Skaddden/Hogan Lovells at Tabs 1 & 21, respectively). The charge for the former entry is $875.00; the charge for the latter entry appears to be $650.00.  Accordingly, the amount of restitution to be awarded with respect to the costs of counsel for current and former Duane Reade employees should be $1,586,000.000 - ($875.00 + $650.00) or $1,584,475.00.

Cuti's arguments in opposition to an award of restitution for these expenses are unconvincing.  To the extent he claims that these expenses were not proximately caused by his conduct and that they resulted from Duane Reade's by-laws and Delaware corporate law, this identical argument was rejected by the Honorable Denise L. Cote, United States District Judge, in United States v. Skowron, supra, 893 F. Supp. 2d at 746, in which she found that such expenses were "a necessary, direct, and foreseeable result of [defendant's] offense of conviction."

29

Legal fees for independent counsel for employees were also approved as an element of restitution by the Honorable Thomas P. Griesa, United States District Judge, in <u>United States v. Levis</u>, <u>supra</u>, 2011 WL 497958 at *2.

Although Cuti argues that these fees should not be subject to restitution because they were not incurred in assisting the government's investigation, I disagree. It is highly probable that without independent counsel, the current and former employees would have refused to be interviewed by the USAO and would have refused to cooperate. As sophisticated attorneys and business executives, the current and former Duane Reade employees would have been well aware that there were risks in speaking with the USAO; an individual's cooperation with the prosecution is not a guarantee of immunity from prosecution in this District. I conclude that independent counsel did facilitate the government's investigation and prosecution of Cuti by ensuring that the current and former Duane Reade employees knew that someone was defending their personal interests, and, thereby, enhancing their willingness to speak freely with the prosecutors.

Cuti also takes issue with the substantial amount -- $1,023,764.01 -- spent on Bergman's representation, claiming that counsel was representing Bergman's own interests and that counsel's retention was not the result of Cuti's conduct and did not

assist the government's investigation.  Cuti's first argument proves too much.  All the independent counsel retained for the current and former Duane Reade employees were ethically bound to put the interest of their clients ahead of all other interests. Such an obligation is inherent in the role of all independent counsel.  Thus, Bergman's counsels' representation was no differ- ent than the representation provided to the other current and former Duane Reade employees.  Second, although Bergman did not testify at Cuti's trial, it does appear that she was "prepped" to testify and that the decision not to call her was a strategic decision made by the USAO at trial (see Revised Appendix Fee and Expense Documentation Counsel for Duane Reade Employees, Dechert/Skaddden/Hogan Lovells at Tabs 26-29).  Finally, to the extent that Cuti contends his conduct was not a proximate cause of the fees incurred to provide representation to Bergman, his argument is contrary to the decisions in United States v. Skowron, supra, 839 F. Supp. 2d 740 and United States v. Levis, supra, 2011 WL 497958, discussed above.

To the extent Cuti takes issue with the manner in which Paul, Weiss segregated out time charges attributable to the arbitration or the SEC civil action, he is correct that there is some imprecision in the methodology.  The time records are, however, the most informative source for determining the nature

of the services provided and when they were provided; the notion that a busy attorney is going to be able to recall, several years after the fact, how much time she spent on a particular day working on arbitration-related matters and how much time she spent working on the criminal proceeding is unreasonable.  From my own review of the time records, I am convinced that Paul, Weiss took a fair, conservative and reasonable approach to separating the compensable from the non-compensable time charges. As the authorities cited at pages 23-24 teach, although more than a "rough estimate" is needed to award restitution, absolute precision is not necessary and some guesswork is acceptable.  To the extent there is any imprecision in the calculations, it is appropriate that Cuti bears the burden of that imprecision.

Accordingly, with respect to the expenses incurred to provide counsel to Duane Reade's current and former employees, I conclude that Duane Reade is entitled to restitution in the amount of $1,584,475.00.

    2.  Legal Fees Paid
        by Duane Reade and
        Oak Hill to Paul, Weiss

Duane Reade and Oak Hill seek a total of $3,176,696.56 as restitution for the fees and disbursements they paid to Paul, Weiss for its investigation of Cuti's conduct and for the assis-

tance provided to the USAO in connection with the criminal prosecution.

A threshold issue raised by Cuti is whether Oak Hill is a "victim" to whom restitution can be awarded under the VWPA or the MVRA.  Both the VWPA and the MVRA, define a "victim" as "a person directly and proximately harmed as a result of the commission of an offense . . . including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."  18 U.S.C. §§ 3663(a)(2), 3663A(a)(2).  In her October 14, 2011 Order, Judge Batts concluded that Duane Reade was entitled to restitution for the expenses it incurred in connection with the Cooley investigations and expenses related to these investigations.  In reaching this conclusion, Judge Batts cited United States v. Battista, supra, 575 F.3d 226, and United States v. Amato, supra, 540 F.3d 153, in which restitution was awarded under the VWPA and MVRA, respectively.  With respect to Oak Hill, Judge Batts stated that "Oak Hill in its capacity as successor to Duane Reade is compensable" (Order dated October 14, 2011 (Docket Item 200) at 1).  In none of her opinions concerning restitution did Judge Batts address the issue of whether Oak Hill was, in fact, the successor to Duane Reade.

Given her decision to award Duane Reade the cost of the Cooley investigations, Judge Batts clearly ruled that Duane Reade is a victim within the meaning of the VWPA and the MVRA and that ruling is, of course, controlling here. Judge Batts' comments concerning Oak Hill are less clear cut. Given the absence of any discussion of the form of Oak Hill's acquisition of Duane Reade, I do not believe that Judge Batts actually made a finding as to whether Oak Hill was a successor to Duane Reade. Rather, I believe the most reasonable interpretation of her statement is that Oak Hill is entitled to restitution to the extent (if at all) that it is a successor to Duane Reade. Thus, I believe the issue of Oak Hill's status as a successor to Duane Reade is still an open question.

As set forth above, Oak Hill did not merge with Duane Reade nor did it directly acquire any Duane Reade stock. Rather, after the acquisition, Oak Hill and the other members of the investor group owned all of the stock of DRS. DRS owned substantially all of the stock of Holdings, and Holdings was the actual owner of the Duane Reade stock (Bishop Decl., Ex. N). Thus, Oak Hill was two steps removed from even being a shareholder of Duane Reade. Given the nature of the transaction by which Oak Hill acquired Duane Reade, I conclude that Oak Hill is not a successor to Duane Reade.

Because it is not a successor to Duane Reade, and there is no claim that Oak Hill assumed any of Duane Reade's debts, I conclude that Oak Hill is not a victim of Cuti's conduct. It is a fundamental principle of corporate law that a parent corporation is usually not liable for the obligations of its subsidiaries. Chevron Corp. v. Salazar, 807 F. Supp. 2d 189, 195-96 (S.D.N.Y. 2011) (Kaplan, D.J.) ("It is a bedrock principle of corporate law that shareholders -- even sole shareholders -- of a corporation are ordinarily not liable for the corporation's debts or obligations . . . ."); Hard Rock Café Int'l (USA), Inc. v. Hard Rock Holdings, LLC, 808 F. Supp. 2d 552, 561 (S.D.N.Y. 2011) (Pauley, D.J.). Thus, by acquiring Duane Reade through two intermediary subsidiaries, Oak Hill assured itself that it would bear no responsibility for Duane Reade's debts. Because Oak Hill never had any legal responsibility for the legal bills Duane Reade incurred as a result of Cuti's conduct, it is impossible to conclude that Oak Hill was "directly and proximately harmed" by Cuti's conduct. Based on the information in the record, it appears that Oak Hill had no more responsibility for Duane Reade's legal bills than it had to suppliers of Duane Reade's merchandise, namely, none. Having chosen to structure its acquisition of Duane Reade in a manner that maintained Oak Hill's corporate separateness, it is difficult to understand why Duane

35

Reade's debts should now be treated as Oak Hill's. In short, Oak Hill is not a corporate successor to Duane Reade; Oak Hill had no legal obligation to pay Duane Reade's bills and Oak Hill was not even a shareholder of Duane Reade. Given the lack of any legal obligation for Duane Reade's debts, Oak Hill was not "directly and proximately" harmed by Cuti's conduct.

Oak Hill argues in opposition that Oak Hill really is the victim because it was the sole owner, albeit indirectly, of Duane Reade. Although there is some element of economic reality to this argument, it ignores a "bedrock" legal principle. Moreover, Oak Hill would, no doubt, not be taking the same position -- that it is the real party in interest -- if it were named as a defendant in an action by an unpaid supplier of Duane Reade or a customer who slipped and fell in a Duane Reade store. Although there can be no question that the use of the corporate form to limit liability is appropriate, e.g. Feitshans v. Kahn, 06 Civ. 2125 (SAS), 2007 WL 2438411 at *3 (S.D.N.Y. Aug. 22, 2007) (Scheindlin, D.J.), permitting a corporation/shareholder to don or shed that protection of the corporate form at its sole option so that it may take advantage of statutory restitution provisions seems unfair on its face.

Accordingly, I find that Oak Hill is not a victim of Cuti's conduct and that the legal fees it paid to Paul, Weiss are not subject to restitution.

Cuti next argues that there is an inadequate evidentiary basis for the award of legal fees. In an effort to segregate out time charges for the arbitration and the SEC action, counsel for Duane Reade and Oak Hill reviewed Paul, Weiss's time records and deleted charges which, on their face, related to work done on the arbitration or the SEC action. Where a single time charge described work on both Paul, Weiss's investigation of Cuti and the arbitration or SEC action, counsel made an allocation and deleted a portion of the time charge. By virtue of its January 13, 2012 submissions, Duane Reade and Oak Hill conceded to approximately $489,355.76 in additional reductions. These adjustments reduced the amount sought in restitution to substantially less than half of the face amount of Paul, Weiss's bills. Despite these reductions, Cuti still argues that the time charges for which restitution is sought include work that relates to the arbitration or the SEC action, and cites a handful of examples that appear to bear out this contention (See Cuti's Memorandum in Opposition to Duane Reade and Oak Hill's Motion for Reconsideration, dated Aug. 29, 2011 (Docket Item 186) at 13-15).

I conclude that the evidentiary standard Cuti advocates is too high.  The amount of restitution to be awarded need not be proven with precision, but "'requires a delicate balancing of diverse, sometimes incomparable, factors, some of which not only lack certainty but may indeed be based on mere probabilities, expectations, guesswork, even a "hunch . . . ."'"  <u>United States v. Niebuhr</u>, <u>supra</u>, 456 F. App'x at 38, <u>quoting</u> <u>United States v. Rossi</u>, <u>supra</u>, 592 F.3d at 376.[9]  I have reviewed the time records submitted in support of Duane Reade and Oak Hill's request for fees and have not found any entries beyond those cited by Cuti which suggest that charges for work done on the arbitration or SEC action have been included.[10]  In any event, I believe that the possibility that non-compensable work has been included in the restitution request can be compensated for by a modest, across-the-board percentage reduction.  This mechanism has routinely been used to correct billing errors in cases where a statute permits the award of attorneys' fees.  <u>E.g.</u>, <u>Santa Fe</u>

---

[9]At common law, where as here, the fact has been established but there is some dispute as to the measure of damages, courts have routinely permitted plaintiffs to recover based on a relaxed standard of proof.  <u>See</u>, <u>e</u>.<u>g</u>., <u>Boyce v. Soundview Technology Group, Inc.</u>, 464 F.3d 376, 391-92 (2d Cir. 2006).

[10]Duane Reade and Oak Hill's revised billing submissions have either eliminated or reduced each of the specific time charges that Cuti claims related in whole or in part to the arbitration or the SEC civil action.

Natural Tobacco Co. v. Spitzer, 00 Civ. 7274 (LAP), 00 Civ. 7750 (LAP), 2002 WL 498631 at *3 (S.D.N.Y. Mar. 29, 2002) (Preska, D.J.) ("If a court finds that the fee applicant's claim is excessive, or that time spent was wasteful or duplicative, it may decrease or disallow certain hours or, where the application for fees is voluminous, order an across-the-board percentage reduction in compensable hours."), citing In re "Agent Orange" Prods. Liab. Litig., 818 F.2d 226, 237 (2d Cir. 1987). Because the errors identified by Cuti are extremely few and Paul, Weiss's billing records are voluminous, I believe the across-the-board percentage reduction should be limited to 2%.

Cuti next argues that the VWPA and MVRA limit restitution to necessary expenses and that the Paul, Weiss legal work was not necessary to the criminal prosecution and investigation. Cuti claims that the Cooley investigations were the "necessary" investigations and that compensation for legal services beyond that are not necessary. The record in this matter belies Cuti's argument. If the product of Cooley's investigations was all that was necessary to the government's investigation and prosecution, the government would not have subpoenaed additional documents from Duane Reade. Moreover, the record demonstrates that Paul, Weiss's own investigation is what led to the Cooley investigations. Thus, Paul, Weiss's own investigation was reasonably

necessary to the government's investigation and prosecution of Cuti.

Cuti's final argument is that the investigative work Paul, Weiss performed prior to the institution of the criminal investigation by the USAO was necessarily done for the arbitration and should not be the subject of a restitution order even if its product was ultimately turned over to the government (Cuti Memo at 12). Paul, Weiss's work here related to Cuti's conduct and the product of that work was relevant to three separate proceedings: the arbitration, the criminal prosecution and the SEC's civil action. To the extent that Paul, Weiss's investigation related to Cuti's conduct and was not limited to matters relevant only to the arbitration or the SEC civil action, it was relevant to the criminal proceeding. The fact that the work predated the commencement of the criminal proceeding does not take it outside of scope of the VWPA or MVRA. <u>United States v. Amato</u>, <u>supra</u>, 540 F.3d at 161-63. The fact that the work was also relevant to the SEC civil action does not take it outside the scope of the VWPA or MVRA because it was the same conduct that gave rise to both the SEC civil action and the criminal proceeding. <u>United States v. Skowron</u>, <u>supra</u>, 893 F. Supp. 2d at 748-49. Because Cuti's conduct was relevant to the criminal investigation and prosecution, the investigative costs are

recoverable notwithstanding the fact that they may have been useful in other proceedings.

           C.   Calculation of the
               Amount of Restitution

The restitution sought by Duane Reade has two components: (1) the fees Duane Reade paid to independent counsel for its current and former employees and (2) the amount Duane Reade paid to Paul, Weiss.

As to the former category, Duane Reade seeks a total of $1,586,000.00. After the deducting the two time entries discussed at pages 28-29, the total amount allocable to this category of restitution is $1,584,575.00.

The calculation of the amount restitution due for Duane Reade's payments to Paul, Weiss is more complicated. Duane Reade and Oak Hill submitted an appendix consisting of 43 tabbed sections. Each tabbed section represents a monthly bill and includes the time and disbursement records that are included in the bill. Some of the bills were paid entirely by Duane Reade, some bills were paid entirely by Oak Hill, and some were paid by Duane Reade in part and by Oak Hill in part.

My calculation of the amount of restitution is set forth in the attached Exhibit A. The column labeled "Tab"

corresponds to the tabbed appendix submitted by Duane Reade and Oak Hill, i.e., each Tab represents a bill sent to Duane Reade and/or Oak Hill. I have included in the attached Exhibit A only those Tabs (or monthly bills) that were paid in whole or in part by Duane Reade. I have omitted the Tabs (or monthly bills) that were paid entirely by Oak Hill because I have determined that Oak Hill is not entitled to restitution.

The columns labeled "Bill No.," "Bill Date," "Period Covered," and "Invoice Amount," are self explanatory. The column labeled "Fees & Disb. Paid by Duane Reade" sets forth the amount of each monthly bill that was paid by Duane Reade. In those instances where the "Invoice Amount" does not equal the "Fees & Disb. Paid by Duane Reade," Oak Hill paid the difference.

As noted above, Duane Reade and Oak Hill submitted a revised appendix in December 2011 in which they deleted certain fees. The column in the annexed Exhibit A labeled "Rev. Fee & Disb. Request" reflects the revised restitution figures set forth in the December 2011 revised appendix. As also noted above, on January 13, 2012, in response to certain objections made by Cuti, Duane Reade and Oak Hill voluntarily withdrew their request for restitution with respect to certain categories of time charges. The column labeled "Rev. Fee & Disb. Request After 1/13/12 Adjustments" reflects the amount of restitution sought after the

adjustments to which Duane Reade consented on January 13 are applied. The final column, labeled "Pro Rata Share of 1/13/12 Fee & Disb. request Paid by Duane Reade" allocates Duane Reade's share of the bills that were jointly paid by Duane Reade. All bills in Exhibit A other than those listed in Tabs 29 through 41 were paid entirely by Duane Reade. The bills listed in Tabs 29 through 41 were paid partially by Duane Reade and partially by Oak Hill. I have calculated Duane Reade's share of the restitution amount with respect to these bills by applying the percentage of the bill paid by Duane Reade to figures listed in the column labeled "Rev. Fee & Disb. Request After 1/13/12 Adjustments." In other words, if Duane Reade paid 75 percent of the bill for a particular month, I recommend that it be awarded 75 percent of the amount of restitution requested. Based on the foregoing, I calculate Duane Reade's total pro rata share of the fees paid to Paul, Weiss that are subject to restitution to be $1,701,530.28, subject to the 2% reduction.

Based on the forgoing, the total restitution figure is $4,544,634.60, calculated as follows:

| | | |
|---|---|---|
| Legal Fees Paid for Current and Former Duane Reade Employees | | $1,584,475.00 |
| Legal Fees Paid to Paul, Weiss by Duane Reade | | |
| Fees Paid | $1,701,530.28 | |
| 2% Per Cent Reduction | ($34,030.61) | |
| Subtotal | $1,667,499.67 | <u>$1,667,499.67</u> |
| Subtotal | | $3,251,974.67 |
| Prejudgment Interest at 9% from 8/1/08 through 12/31/12[11] | | <u>$1,292,659.93</u> |
| **GRAND TOTAL** | | **<u>$4,544,634.60</u>** |

IV. <u>Conclusion</u>

Accordingly, for all the foregoing reasons, I respectfully recommend that Duane Reade be awarded restitution in the amount of $4,544,634.60 which figure includes interest through

---

[11]"[W]here damages were incurred at various times, interest is to be computed 'upon each item from the date it was incurred or upon all damages from a single reasonable intermediate date.' N.Y. C.P.L.R. § 5001(b). Prejudgment interest is calculated at 9% per annum. Id. § 5004." <u>Grace v. Corbis Sygma</u>, 535 F. Supp. 2d 392, 402 (S.D.N.Y. 2008) (Chin, then D.J., now Cir. J).

December 31, 2012 and that Oak Hill not be awarded any sum as restitution.

V.   <u>OBJECTIONS</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C), the parties shall have fourteen (14) days from receipt of this Report to file written objections.  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Deborah A. Batts, United States District Judge, 500 Pearl Street, Room 2510, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Batts.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>United States v. Male Juvenile</u>, 121 F.3d 34, 38 (2d Cir. 1997); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59

(2d Cir. 1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-238 (2d

Cir. 1983).

Dated: New York, New York
        December 21, 2012

                         Respectfully submitted,

                         _____
                         HENRY PITMAN
                         United States Magistrate Judge

Copies transmitted to:

Joan M. Loughnane, Esq.
Jonathan R. Streeter, Esq.
Rebecca A. Monck, Esq.
Assistant Unted States Attorneys
Unite States Attorney's Office
Southern District of New York
1 Saint Andrews Plaza
New York, New York  10007


Lucas Michael Fitzgerald
U.S. Securities and Exchange Commission
11th Floor
5670 Wilshire Boulevard
Los Angeles, California  90036

Daniel J. Beller, Esq.
Paul, Weiss, Rifkind, Wharton
   & Garrison LLP
1285 Avenue of the Americas
New York, New York  10019

Reid H. Weingarten, Esq,
Erik L. Kitchen, Esq.
Bruce C. Bishop, Esq.
Michelle L. Levin, Esq.
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795

# EXHIBIT A

| Tab | Bill No. | Bill Date | Period Covered | Invoice Amount | Fees & Disb Paid by Duane Reade | Rev. Fee & Disb. Request | Rev. Fee & Disb. Request After 1/13/12 Adjustments | Pro Rata Share 1/13/12 Fee & Disb. Request Paid by Duane Reade |
|-----|----------|-----------|----------------|----------------|----------------------------------|--------------------------|---------------------------------------------------|-------------------------------------------------------------------|
| 1 | 194338 | 11/16/2006 | 10/1/2006 – 10/31/2006 | 135,648.46 | 135,648.46 | 5,904.97 | 4,950.66 | 4,950.66 |
| 1A | 194336 | 11/16/2006 | 9/1/2006 – 10/1/2006 | 316,063.60 | 316,063.60 | 9,811.98 | 9,811.98 | 9,811.98 |
| 2 | 201992 | 12/20/2006 | 11/1/2006 – 11/30/2006 | 205,886.27 | 205,886.27 | 52,637.02 | -0- | -0- |
| 2A | 194394 | 12/20/2006 | 11/1/2006 – 11/30/2006 | 237,324.91 | 237,324.91 | 211,562.68 | 211,125.21 | 211,125.21 |
| 3 | 204274 | 3/6/2007 | 12/1/2006 – 12/31/2006 | 210,238.90 | 210,238.90 | 104,219.85 | -0- | -0- |
| 3A | 204364 | 2/28/2007 | 12/1/2006 – 1/31/2007 | 37,403.06 | 37,403.06 | 37,403.06 | 37,403.06 | 37,403.06 |
| 4 | 204351 | 3/6/2007 | 1/1/2007 – 1/31/2007 | 204,401.71 | 204,401.71 | 28,349.41 | 8,367.75 | 8,367.75 |
| 7 | 205025 | 4/12/2007 | 2/1/2007 – 2/28/2007 | 244,528.51 | 244,528.51 | 48,398.78 | 48,398.78 | 48,398.78 |
| 8 | 205095 | 4/30/2007 | 3/1/2007 – 3/31/2007 | 284,384.41 | 284,384.41 | 62,147.92 | 62,147.92 | 62,147.92 |
| 9A | 205091 | 4/30/2007 | 3/1/2007 – 3/31/2007 | 46,426.70 | 46,426.70 | 45,549.14 | 45,549.14 | 45,594.14 |
| 11 | 205156 | 5/31/2007 | 4/1/2007 – 4/30/2007 | 206,436.22 | 206,436.22 | 21,966.34 | 21,966.34 | 21,966.34 |
| 12 | 208392 | 6/29/2007 | 5/1/2007 – 5/31/2007 | 183,177.14 | 183,177.14 | 41,724.68 | 35,687.18 | 35,687.18 |
| 14 | 208474 | 8/15/2007 | 6/1/2007 – 6/30/2007 | 75,279.96 | 75,279.960 | 58,289.49 | 1,809.99 | 1,809.99 |
| 16 | 210652 | 9/28/2007 | 7/1/2007 – 8/31/2007 | 38,027.65 | 38,027.65 | 26,002.50 | 25,114.00 | 25,114.00 |
| 19 | 211779 | 12/19/2007 | 9/1/2007 – 11/30/2007 | 42,209.32 | 42,209.32 | 6,260.87 | 6,260.87 | 6,260.87 |
| 20 | 214027 | 2/13/2008 | 12/1/2007 – 12/31/2007 | 19,228.15 | 19,228.15 | 15,661.67 | 14,393.67 | 14,393.67 |
| 23 | 210036 | 6/16/2008 | 12/10/2007 – 4/30/2008 | 100,000.82 | 100,000.82 | 89,924.14 | 89,924.14 | 89,924.14 |
| 25 | 210043 | 8/28/2008 | 5/1/2008 – 7/31/2008 | 183,385.89 | 183,385.89 | 169,891.97 | 169,891.97 | 169,891.97 |
| 27 | 210040 | 10/31/2008 | 7/1/2008 – 9/30/2008 | 96,746.69 | 96,746.69 | 91,621.11 | 91,621.11 | 91,621.11 |
| 28 | 210046 | 2/3/2009 | 5/1/2008 – 12/31/2008 | 274,682.20 | 274,682.20 | 178,672.26 | 177,609.26 | 177,609.26 |
| 29 | 210056 | 4/7/2009 | 1/1/2009 – 1/31/2009 | 113,293.84 | 102,064.19 | 109,821.27 | 109,821.27 | 98,935.82 |
| 30 | 210059 | 4/7/2009 | 2/1/2009 – 2/28/2009 | 148,603.51 | 134,762.71 | 34,488.19 | 34,488.19 | 31,275.99 |
| 31 | 233354 | 4/29/2009 | 3/1/2009 – 3/31/2009 | 229,690.77 | 206,369.77 | 32,840.73 | 32,840.73 | 29,506.34 |
| 32 | 233361 | 5/2/2009 | 4/1/2009 – 4/30/2009 | 225,705.05 | 203,405.25 | 18,382.47 | 18,382.47 | 16,566.27 |
| 33 | 233365 | 6/30/2009 | 5/1/2009 – 5/31/2009 | 207,075.51 | 186,835.66 | 11,494.62 | 11,494.62 | 10,371.12 |
| 34 | 233373 | 8/6/2009 | 6/1/2009 – 6/30/2009 | 292,798.69 | 252,415.59 | 15,034.03 | 15,034.03 | 13,671.55 |
| 35 | 233379 | 8/27/2009 | 7/1/2009 – 7/31/2009 | 393,288.29 | 332,359.25 | 8,794.67 | 8,794.67 | 7,432.19 |
| 36 | 233384 | 9/25/2009 | 8/1/2009 – 8/31/2009 | 167,201.72 | 150,481.55 | 76,782.38 | 62,976.38 | 56,678.74 |

| Tab | Bill No. | Bill Date | Period Covered | Invoice Amount | Fees & Disb Paid by Duane Reade | Rev. Fee & Disb. Request | Rev. Fee & Disb. Request After 1/13/12 Adjustments | Pro Rata Share 1/13/12 Fee & Disb. Request Paid by Duane Reade |
|---|---|---|---|---|---|---|---|---|
| 37 | 238645 | 11/2/2009 | 9/1/2009 - 9/30/2009 | 106,291.71 | 95,820.51 | 79,071.67 | 68,803.17 | 62,025.11 |
| 38 | 238649 | 12/14/2009 | 10/1/2009 - 10/31/2009 | 103,348.42 | 93,642.82 | 95,504.33 | 95,504.33 | 86,535.38 |
| 39 | 238657 | 12/23/2009 | 11/1/2009 - 11/30/2009 | 16,539.64 | 14,898.14 | 2,587.50 | 2,587.50 | 2,330.70 |
| 40 | 238663 | 1/27/2010 | 12/1/2009 - 12/31/2009 | 4,612.49 | 4,195.49 | 671.96 | 671.96 | 622.21 |
| 41 | 238670 | 2/25/2010 | 1/1/2010 - 1/31/2010 | 161,867.37 | 146,412.57 | 155,492.88 | 46,621.13 | 42,169.83 |
| 42 | 238673 | 3/29/2010 | 2/1/2010 - 2/28/2010 | 63,258.22 | 57,131.77 | 55,820.50 | 55,820.50 | 55,820.50 |
| 43 | 240659 | 4/13/2010 | 3/1/2010 - 3/31/2010 | 127,917.42 | 119,321.71 | 125,930.50 | 125,510.50 | 125,510.50 |

TOTAL    1,701,530.28